BEN POLIKOFF, Plaintiff-Appellee, Cross-Appellant, *v.* MAURICE S. LEVY *et al.*, Defendants-Appellants, Cross-Appellees.

(No. 53839;

First District—April 8, 1971.

Rappaport, Clorfene & Rappaport and Nat M. Kahn, both of Chicago, for appellants.

Julius A. Polikoff and Schiff, Hardin, Waite, Dorschell & Britton, both of Chicago, for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

This is an appeal from a decree entered on plaintiff's motion for a summary decree ordering a judicial sale of all of the assets of a joint venture, its windup, and distribution of the net sale proceeds to joint venture members. The decree also approved accountings filed by the defendants of the operations of the joint venture.

A cross-appeal and separate appeals were filed seeking to reverse those portions of the decree approving the accountings and to require a proper accounting.

The trial court decided the matter on pleadings and affidavits in support of the respective separate motions by plaintiff and defendants for entry of a summary decree in his or their favor. No oral testimony was introduced. Defendants contend that the court erred in granting a summary decree since the respective motions for summary decree presented genuine issues of material facts, and further erred in ordering a forced public judicial sale of the assets of the joint venture.

The subject-matter of this case has been the focal point of much litigation. To understand the issues of the present case a review of the past litigation and background, at least in a limited way, is necessary.

A joint venture of some forty-nine persons, known as the "State House Inn", located in Springfield, Illinois, was formed in 1959, acquired land and constructed a motor motel thereon known as the "State House Inn". Plaintiff, Ben Polikoff, was one of the original members of this joint venture.

The instant suit was brought by the plaintiff, Ben Polikoff, in November of 1962, against four defendants, Maurice S. Levy, Louis C. Rappaport, Harry Miller and Sidney Miller. The original complaint consisted of four counts. Counts I and II were for money had and received in the alleged sum of $57,500 and interest thereon. Counts III and IV were based on alleged violations of the Illinois and Federal Securities Acts by defendants.

The trial court dismissed Counts III and IV. This was affirmed in *Polikoff v. Levy* (1st Dist. 1965), 55 Ill.App.2d 229, 204 N.E.2d 807. Notice of appeal was dismissed by the Illinois Supreme Court on May 18, 1965. Petition for leave to appeal to the Illinois Supreme Court was denied on May 18, 1965. Petition for writ of *certiorari* by the United States Supreme Court was denied on November 8, 1965. 382 U.S. 903, 86 S. Ct. 237, 15 L.Ed.2d 156.

Subsequently, on August 4, 1967, this court, in *State House Inn Corp. v. Polikoff* (1st Dist. 1967), 86 Ill.App.2d 97, 230 N.E.2d 283, affirmed the trial court's decree dismissing the complaint of The State House Inn

Corporation praying for a declaratory decree that it had good title to all of the joint venture assets. Leave to appeal was denied by the Illinois Supreme Court.

On December 17, 1965, plaintiff, by leave of court, filed a third amended complaint in this case in Chancery and named therein as additional defendants all of the other members of the joint venture and The State House Inn Corporation, a corporation. The third amended complaint consisted of two counts.

Count I was for a separate action at law for money had and received. This count was stricken by the trial court. No appeal has been taken from that order.

Count II, in Chancery, charged a wrongful dissolution of the joint venture by the principal defendants in conveying and transferring all of the joint venture assets to the new corporation, The State House Inn Corporation, without the consent of and over the objection of Ben Polikoff, plaintiff. It prayed that the court wind up the affairs of the joint venture and for such other and further relief as might be just and equitable.

Upon separate motion of both plaintiff and defendants for a summary decree in their respective favors, the court ordered the joint venture to be wound up by a public judicial sale of all of its assets and the distribution of the net proceeds of such sale to the joint venture members. It also approved the accountings filed by the defendants.

The motion for summary decree by plaintiff was supported by the affidavit of plaintiff. This motion set forth that all of the property of the joint venture was purportedly transferred to the defendant-corporation, The State House Inn Corporation; that this transfer was without the consent and over the objection of the plaintiff—joint venturer; that such transfer was held wrongful and ineffective by the decree of the Circuit Court of Cook County in Case No. 63 S 26807; and that, as a matter of law, the plaintiff was entitled to a decree declaring the joint venture dissolved and winding up the joint venture. Attached to this motion were exhibits which included the court decree to which the motion referred. The affidavit of plaintiff attached stated that the matters therein were on his personal knowledge and that if sworn as a witness he could testify competently thereto. It further stated that at no time did the plaintiff take the initiative or insist that title to the assets of the joint venture be transferred to a new corporation to be formed, nor did he sign any title transfer papers or promise to join in conveyance of title to such assets; that these issues were all passed on in the former Case No. 63 S 26807, wherein this plaintiff defended, supporting his motion

there for summary decree by motion and affidavit asserting that he had refused to enter into the agreement for transfer of the joint venture assets to the corporation.

Thereafter defendant, Maurice S. Levy, and other defendants, filed objections of defendants in opposition to motion of plaintiff for entry of summary decree in his favor in which they contended that the parties, issues and subject-matter in this cause and in Case No. 63 S 26807 were not the same. This pleading further contained a motion by defendants for summary decree of dismissal of the suit, reciting the facts concerning development of the joint venture.

Defendants' pleading stated that a limited partnership agreement had been prepared to raise additional funds to purchase a parking lot site for the joint venture; that the plaintiff first refused to sign the limited partnership agreement because it designated him as a limited partner and he insisted on being a general partner; that plaintiff was leaving the city for a period of time so that he signed the original limited partnership agreement as a general partner and authorized rewriting of the pertinent pages of that agreement to refer to and describe him as a general partner; that after the changes in the agreement had been made, plaintiff refused to sign the revised agreement and the statutory certificate of compliance with the Uniform Partnership Act; that plaintiff insisted that title to all of the assets of the joint venture be transferred to a new corporation so that none of the joint venture members would be personally liable for any future debts of the venture; that thereafter plaintiff repudiated this oral agreement and consent to transfer of the assets and refused to accept shares of stock of the corporation for his holdings in the joint venture; and that plaintiff then made a demand on the original defendants, Levy, Rappaport, Harry Miller and Sidney Miller, for the return of the $57,500 that he had paid and contributed to the joint venture.

This motion of defendants was supported by the affidavit of Maurice S. Levy. It stated that after refusal of the plaintiff to sign the statutory certificate of formation of the limited partnership, plaintiff took the initiative and insisted on transfer of the assets of the joint venture to a new corporation to be formed to avoid personal liability; but that thereafter he repudiated his previous promise to join in conveyance of the title of the assets of the joint venture; and that the affiant had personal knowledge of the matters contained in the motion and the matters therein stated were incorporated in the affidavit by reference and were true.

A motion was filed by defendants to strike the third amended complaint and dismiss the suit on the ground that the earlier decision in

55 Ill.App.2d 229, filed January 25, 1965, determined the issues here, that the same were *res judicata* and that the plaintiff had chosen a remedy at law by Counts I and II; that his remedy at law was adequate to award plaintiff the reasonable value of his interest in the joint venture on the date he was deprived of his rights as a member of the joint venture and in effect resigned as a member; and that since the rights of approximately forty-five other members of the joint venture would be unduly and harshly prejudiced and injured by the extraordinary remedy of dissolution of the joint venture, and since plaintiff had an adequate remedy at law, which he chose, the maximum relief to which plaintiff was entitled was the reasonable value of his interest on April 16, 1962, the day he claimed he was deprived of his rights as a member of the joint venture, or on July 19, 1962, the day he in effect resigned. This motion was denied.

Thereafter defendants filed a motion for leave to file alternative answers and defenses to the third amended complaint. Such answers alleged that plaintiff was obligated to accept stock in the corporation for his holdings in the joint venture and that his dissolution of the joint venture was wrongful. It alleged that such dissolution being wrongful, section 42 of the Illinois Uniform Partnership Act (Ill. Rev. Stat. 1967, ch. 106½, par. 42) was applicable as to liquidation of plaintiff's interest in the joint venture.

Plaintiff filed a motion objecting to the motion of defendants to file alternative answers and defenses, contending it was in bad faith, legally insufficient, and that to allow it would be grossly inequitable. The "bad faith" ground was based upon the assertion that defendant Louis C. Rappaport had sworn in an affidavit filed in the companion case that the plaintiff (there defendant) stated that neither he nor his agent, Alexander Polikoff, would join in forming the corporation, and that in a second affidavit supporting the proposed answer and defense he stated that the plaintiff signed a notice of additional contribution to raise funds to buy real estate and that as a result of this notice "practically all" of the other joint venture members contributed their *pro rata* share of additional money. Plaintiff further contended that it would be grossly inequitable to permit defendants to file the new pleading since defendants had joined issue on plaintiff's motion for summary decree some twenty months earlier, had requested and received many continuances of hearings on it contending that the decision in the companion case then pending would be decisive in this case, while now defendants assert such decision is not decisive here.

Upon motion of plaintiff, Ben Polikoff, to strike the affidavit of the defendant, Maurice S. Levy, supporting the defendants' motion for sum-

mary judgment, the court granted such motion and struck the affidavit. It also struck the affidavit of plaintiff, Ben Polikoff, in support of the plaintiff's motion for a summary judgment. It denied the motion of defendants for a summary decree of dismissal and granted the motion of plaintiff for summary decree.

While the record in this case does not show the trial court's reasons for striking the affidavit of defendant Levy in support of his motion for summary judgment, it is evident that the ruling of the trial court was proper on at least one or more of three grounds.

■■ First, the affidavit of Levy purported to be made as agent of all defendants, whereas the record does not so indicate. Certain assertions in the affidavit are inconsistent with the answer of the corporate defendant to the motion of plaintiff for summary decree filed in Cause No. 63 S 26807. Second, many of the statements were mere conclusions and there was a failure to set forth factual information. Finally, the affidavit did not meet the requirement of Supreme Court Rule 191. Ill. Rev. Stat. 1969, ch. 110A, par. 191.

■■ The determination in the earlier case (55 Ill.App.2d 229) that the original transaction was a joint venture is *res judicata* here. No genuine issue of fact is present in the instant case. Rather we conclude that the issue here is one of law.

■■ On the issue of law, it is clear that defendants have no right to buy plaintiff, Ben Polikoff's interest in the joint venture. A co-venture is governed substantially by the same rules which govern a partnership. The settled law is that where, as here, a partner or joint venturer retires without himself causing a wrongful dissolution, the copartners or co-venturers have no right to buy the retired partner's or co-venturer's interest. Lindley, Partnership (11th ed. 1950), p. 660; Story, Partnership (2d ed. 1846), sec. 351, pp. 528-530; *Reinhardt v. Reinhardt* (4th Dist. 1933). 271 Ill.App. 287. Plaintiff here did not wrongfully withdraw from the joint venture nor cause a wrongful dissolution. Section 42 of the Illinois Uniform Partnership Act is not applicable here since plaintiff did not cause a wrongful dissolution.

■■ Actually, by transfer of certain joint venture or partnership assets to a corporation, defendants caused a wrongful dissolution of the partnership. Plaintiff properly could withdraw from the partnership since the partnership agreement specified no duration or term of the partnership. (*Thanos v. Thanos* (1924), 313 Ill. 499, 145 N.E. 250; 29 I.L.P. Partnership, sec. 234, at 421.) The defendants having no right to buy plaintiff's joint venture interest, their contentions as to the date and manner of valuation of the interest are not relevant to this case.

■■ The established procedure in winding up a dissolved joint venture

where the dissolution was not caused in contravention of the agreement, unless the agreement creating the joint venture provides otherwise or all joint venturers agree otherwise, is to convert its assets into cash by sale, discharge its liabilities, and distribute the surplus, if any, to its members. Section 38 (1) of the Illinois Uniform Partnership Act so provides. Such was the rule of partnership law prior to the statute. (Lindley, Partnership (11th ed. 1950), p. 657; Story, Partnership (2d ed. 1846), sec. 347, pp. 520, 527-528; Rowley, Partnership (2d ed. 1960), Vol. 1, pp. 670, 696, 709, 736; 68 C.J.S., Partnership, sec. 388, p. 902.) Neither section 38 (2) nor section 43 of the Illinois Uniform Partnership Act is applicable to this case.

■■ Where the co-venturers cannot agree on the method of sale at dissolution, a public judicial sale is the only available method of conversion of the assets. Equitable principles and possible unfavorable results of a forced judicial public sale cannot compel disregard for the application of the ordinary and traditional methods of final settlement of a business relationship. The parties have failed to provide by their agreement a possibly more favorable method of liquidation. The trial court properly decreed a public judicial sale in the instant case.

The cross and separate appeals in this case attack that portion of the trial-court decree which approved defendants' accounting. Defendants filed 20 documents as an accounting for the co-venture operations. These documents consisted of balance sheets, financial statements and monthly reports prepared by accountants. The accountants' letters accompanying some of the various documents stated that the accountants expressed no opinion on the financial statements and in certain instances that the documents were prepared from the books and records without audit or other examination. Many of these documents pertain to operations of the defendant-corporation. They do not purport to be accounts of the co-venture or partnership.

Each partner of a partnership or co-venturer of a co-venture is entitled to a "formal account" as to partnership or co-venture operations and affairs. Section 22 of the Illinois Uniform Partnership Act (Ill. Rev. Stat. 1969, ch. 106½, par. 22). "* * * true and full information of all things affecting the partnership * * *." is to be rendered each partner on demand. Section 20 of the Illinois Uniform Partnership Act. Ill. Rev. Stat. 1969, ch. 106½, par. 20.

■■■ An accounting is a statement of receipts and disbursements. A final account of a partnership or co-venture should show all of the detailed financial transactions of the business and the true status of the firm's assets. In *Wylie v. Bushnell* (1917), 277 Ill. 484, 115 N.E. 618, the court, in passing on a trustee's report, said (277 Ill. at 491):

"Of course, there can be no question as to the duty of a trustee to keep regular and accurate accounts during the whole course of his trusteeship, from which it can be ascertained what property has come into his hands, what has passed out and what remains therein, including all receipts and disbursements in cash, and the sources from which they came, to whom paid and for what purpose paid. [Citing authorities.]"

In an accounting on dissolution of a partnership or co-venture, the same type of account is required as that of a trustee. The account should list all receipts and disbursements made and the original vouchers, bills and cancelled checks should be tendered or available for inspection to support the items listed. It should include a listing of original contributions and current assets and liabilities.

■■■ While it is apparent that the account in the instant case must cover many years, will consist of many items, and will require production of many documents, yet in order for the account to be of any value or to fulfill the duty of accounting it cannot be merely a summary or lump listing of types of items. Simply because a matter has become complicated or voluminous does not excuse the duty of giving "true and full information". (Illinois Uniform Partnership Act, sec. 20; Ill. Rev. Stat. 1969, ch. 106½, par. 20. *Jackson v. Jackson* (1st Dist. 1951), 343 Ill. App. 31, 98 N.E.2d 169.) While the burden may be considerable, this does not eliminate the requirement of a proper account where a duty to account exists. (*Altschuler v. Altschuler* (1951), 410 Ill. 169, 101 N.E.2d 552.) That which was filed as an account does not comply with the duty to account. The decree of the circuit court, in so far as it approved the accounting, was in error and must be reversed. The judgment of the Circuit Court of Cook County is affirmed in part and reversed in part, and this cause is remanded to that court with directions to order the filing of proper and sufficient accountings and for further proceedings in accordance with the views herein expressed.

Affirmed in part, reversed in part and remanded with directions.

SMITH, P. J., and TRAPP, J., concur.