JEWEL COMPANIES, INC., Plaintiff-Appellee, *v.* THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellants.

First District (5th Division)    No. 76-1659

Opinion filed March 3, 1978.

William J. Scott, Attorney General, of Chicago (Mary F. Stafford, Assistant Attorney General, of counsel), for appellants.

Martin, Craig, Chester & Sonnenshein, of Chicago (Charles G. Chester and Rodney W. Osborne, of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiff brought this action under the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*) to review an order requiring it to make estimated deposits of funds on 10 State, county, and municipal sales and use taxes. The circuit court reversed the order of the Director holding that although Jewel must make estimated deposits on two of the taxes, it is not required to make estimated deposits on the eight remaining taxes. On appeal, the Department contends that the lower court's ruling is erroneous.

The Illinois sales and use tax scheme consists of 10 separate acts which deal with four different categories of transactions and provide revenue to three different levels of government—State, county and municipal. These provisions include the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 440 *et seq.*) (R.O.T.); the Use Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 439.1 *et seq.*) (U.T.); the Service Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 439.101 *et seq.*) (S.O.T.); the Service Use Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 439.31 *et seq.*) (S.U.T.); the Municipal Retailers' Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 24, par. 8—11—1) (M.R.O.T.); the Municipal Service Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 24, par. 8—11—5) (M.S.O.T.); the Municipal Use Tax Act (Ill. Rev. Stat. 1975,* ch. 24, par. 8—11—6) (M.U.T.); the County Retailers' Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 34, par. 409.1) (C.R.O.T.); the County Service Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 34, par. 409.2) (C.S.O.T.); and the County Use Tax Act (Ill. Rev. Stat. 1975,* ch. 34, par. 409.10) (C.U.T.).

The latter nine acts incorporate by reference section 3 of the R.O.T. Act (Ill. Rev. Stat. 1973, ch. 120, par. 442) entitled "Returns-Payment of tax-Deductions-Discounts-Disposition of proceeds-Accounting." The U.T., S.U.T., S.O.T., M.R.O.T. and C.R.O.T. Acts directly incorporate by reference section 3 of the R.O.T. Act. (Ill. Rev. Stat. 1973, ch. 120, pars. 439.12, 439.42, 439.112, ch. 24, par. 8—11—1; ch. 34, par. 409.1.) The M.U.T. and C.U.T. Acts incorporate by reference section 12 of the U.T.

---

* The M.U.T. and C.U.T. Acts did not become effective until August 26, 1974.

Act (Ill. Rev. Stat. 1975, ch. 24, par. 8—11—6; ch. 34, par. 409.10) which in turn adopts section 3 of the R.O.T. Act. (Ill. Rev. Stat. 1975, ch. 120, par. 439.12.) Similarly, the M.S.O.T. and C.S.O.T. Acts incorporate by reference section 12 of the S.O.T. Act (Ill. Rev. Stat. 1973, ch. 24, par. 8—11—5; ch. 34, par. 409.2) which also adopts section 3 of the R.O.T. Act (Ill. Rev. Stat. 1973, ch. 120, par. 439.112). All nine acts incorporate by reference any subsequent amendments made to section 3 of the R.O.T. Act.

In 1969 the Illinois Legislature amended section 3 of the R.O.T. Act (Ill. Rev. Stat. 1969, ch. 120, par. 442) and section 9 of the U.T. Act (Ill. Rev. Stat. 1969, ch. 120, par. 439.9) to require estimated tax payments by the end of the month in which the taxes were collected for all taxpayers whose average monthly tax liability for the previous year exceeded $5,000. Pursuant to current Department Regulations the taxpayer files its estimated deposit using a Form E.R.O.T.—1. At the same time, it files its monthly return for the previous month using Form RR-1A.

Most taxpayers are required to file a monthly return. Jewel, however, with the permission of the Department, files its returns on every fourth Saturday or 13 times per year.

On June 18, 1975, the Department sent Jewel three notices of tax liability. These notices alleged discrepancies in some of Jewel's E.R.O.T. deposits from 1973 through 1975. Specifically, the Department claimed that Jewel underestimated and consequently underpaid its deposits.

Jewel protested the notices of tax liability. Following a hearing and upon the recommendations of the hearing referee, the Director issued a final assessment disallowing Jewel's 2% vendor's discount and charging it interest on those funds not deposited timely, pursuant to the provisions of section 3 of the R.O.T. Act (Ill. Rev. Stat. 1973, ch. 120, par. 442).

Jewel then filed a complaint for administrative review seeking reversal of the final decision of the Director. The circuit court entered a judgment order reversing the decision of the Director and finding in favor of Jewel.

Opinion

Both parties agree that the amendments to section 3 of the R.O.T. Act and section 9 of the U.T. Act require Jewel to make estimated deposits on these two taxes. The Department, however, contends that Jewel also must make estimated deposits on the remaining eight sales and use taxes because they incorporate by reference the amendment to section 3 of the R.O.T. Act.

The cardinal rule of statutory construction is that a statute must be construed so as to ascertain and give effect to the intention of the legislature. (*Electrical Contractors Association v. Illinois Building*

*Authority* (1966), 33 Ill. 2d 587, 213 N.E.2d 761.) Although, as the Department argues, legislative intent should be primarily sought from the language used in the statute (*Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 256 N.E.2d 758) where the language is ambiguous the court may also look to the nature and subject matter of the act. *Nicholson v. Village of Schaumburg Center* (1961), 33 Ill. App. 2d 197, 178 N.E.2d 680.

Here, section 3 of the R.O.T. Act when read in conjunction with the incorporation by reference provisions of the other nine acts clearly provides for estimated tax deposits. Nevertheless, we find ambiguity in the fact that the legislature amended section 9 of the U.T. Act along with section 3 of the R.O.T. Act. Because section 12 of the U.T. Act incorporates by reference section 3 of the R.O.T. Act, amending section 9 of the U.T. Act appears to have been a useless gesture. However, the legislature is presumed not to have done a useless thing in enacting a statute. (*Pinkstaff v. Pennsylvania R.R. Co.* (1964), 31 Ill. 2d 518, 202 N.E.2d 512.) Accordingly, it appears that the legislature's intent may well have been quite different than the resultant language suggests.

The legislature's amending of section 9 of the U.T. Act indicates to us that its intent was to amend only the R.O.T. and U.T. Acts. Support for this conclusion can be found in the reason for amending these two acts. Where a statute is ambiguous the court may look to the necessity or reason for its enactment. (*In re Roberts Park Fire Protection District v. Village of Bridgeview* (1975), 61 Ill. 2d 429, 337 N.E.2d 8.) The 1969 amendments to the U.T. and R.O.T. Acts, which in effect doubled the State's tax collections in August 1969, were prompted by the *State's* dire financial position in that year. (See I Journal of the House of Representatives of the Seventy-Sixth General Assembly of the State of Illinois, 1969 Fiscal Message by Governor Richard B. Ogilvie February 5, 1969.) Because the State acts merely as a collector of and trustee for the county and municipal taxes, requiring estimated deposits of these taxes would not have enhanced the State's financial position.

■■ If a statute is susceptible to more than one construction it should, if possible, be given the construction which will effectuate or carry out its purpose even though such construction is not within the strict literal interpretation of the statute. (*Scott v. Freeport Motor Casualty Co.* (1942), 379 Ill. 155, 39 N.E.2d 999.) The spirit of an enactment controls over the letter in ascertaining and giving effect to the intention of the General Assembly. (*Brown v. Burdick* (1974), 16 Ill. App. 3d 1071, 307 N.E.2d 409.) Here, although the legislature incorporated by reference the 1969 amendment of section 3 of the R.O.T. Act into the other nine acts, it appears that it did so inadvertently and that its intention was only to amend the R.O.T. and U.T. Acts.

The Department nonetheless argues that a 1976 amendment to section 3

of the R.O.T. Act which requires estimated deposits of the R.O.T., U.T., S.O.T., S.U.T., M.R.O.T., M.S.O.T., C.O.T., and C.S.O.T. (Ill. Rev. Stat. 1976, ch. 120, par. 422) indicates that the 1969 amendment to section 3 of the R.O.T. Act was meant to apply to all remaining sales and use taxes. However, the use of more explicit language in a subsequent amendment suggests that doubt existed as to the legislature's intention in 1969. Moreover, while it may be true that the 1976 General Assembly felt that the estimated deposit provisions should apply to all sales and use taxes, this does not establish that the 1969 General Assembly was similarly inclined.

■■■ Of course we cannot be sure that the legislature did not intend to require estimated deposits on all sales and use taxes as the Department suggests. However, at the very least the simultaneous amendments of section 3 of the R.O.T. Act and section 9 of the U.T. Act raise doubt in our minds as to the intent of the legislature. This doubt is significant because taxing laws are to be strictly construed and not to be extended beyond the clear import of the language used. Any doubt as to the application of taxing laws must be construed most strongly against the government and in favor of the taxpayer. (*Caterpillar Tractor Co. v. Department of Revenue* (1963), 29 Ill. 2d 564, 194 N.E.2d 257.) Accordingly, we hold that Jewel was not required to make estimated deposits on other than the R.O.T. and U.T. taxes.

For the foregoing reasons the judgment of the circuit court reversing the order of the Director of the Department of Revenue is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.